UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE B., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 21 CV 3433 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steveantonio (Steve) B. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand [14][1] is denied, defendant's motion for summary judgment [18] is granted, and the decision denying the application for benefits is affirmed.

**Background**

**A.    Procedural Background**

On February 28, 2019, plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on November 29, 2016. [13-1] 26. Plaintiff's claim was denied initially on June 12, 2019, and upon reconsideration on November 12, 2019. [*Id.*] Thereafter, plaintiff requested a hearing, which was held before an administrative law judge (ALJ) on November 30, 2020. [*Id.*] 36–62. In a decision dated December 28, 2020, the ALJ found that plaintiff was not disabled and denied his application. [*Id.*] 26–31. The Appeals Council denied review on April 27, 2021, rendering the ALJ's decision the final decision of the Commissioner. [*Id.*] 5. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [8, 9].

### B.    The ALJ's Decision

In evaluating a claim for disability benefits, ALJs follow a five-step, sequential process. *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020). The ALJ must evaluate the following:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner] ...; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (alterations in original) (quoting *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000)). *See also* 20 C.F.R. § 404.1520. "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868.

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the relevant period, *i.e.*, from his alleged onset date of November 29, 2016 through his date last insured of December 31, 2016. [13-1] 28. At step two, the ALJ found that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." [*Id.*] 29. The ALJ therefore ended the analysis and did not proceed to step three. The ALJ accordingly found that plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 29, 2016, the alleged onset date, through December 31, 2016, the date last insured. [*Id.*] 31.

### Legal Standard

Courts "apply a very deferential standard of review to the ALJ's decision." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (citation and internal quotations omitted). In its "extremely limited" role, *id.*, the Court must "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir.

2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). *See also Stephens*, 888 F.3d at 327 ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). "If substantial evidence supports the ALJ's conclusions, the court 'must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding.'" *Chavez*, 96 F.4th at 1021 (quoting *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016)).

## Discussion

Plaintiff argues that the ALJ erred in finding that his conditions were not "medically determinable impairments." [15] 7–9. Plaintiff also asserts that to the extent the ALJ made an alternative finding on the issue of severity, the ALJ's decision that plaintiff's impairments were not severe was not supported by substantial evidence. [*Id.*] 10–15.

### A. The ALJ Committed an Error of Law

To be entitled to benefits under the Social Security Act, a claimant must be "aged, blind, or disabled." 42 U.S.C. § 1382(a)(1). The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* at § 1382c(a)(3)(A).

As noted, in evaluating a claim for disability benefits, ALJs follow a five-step, sequential process. *Fetting*, 62 F.4th at 336; *Apke*, 817 F. App'x at 255. At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. § 404.1521. The regulations state that to be considered "medically determinable," the alleged "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* The regulations instruct that ALJs "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* Only after the ALJ establishes that a claimant has a medically determinable impairment will the ALJ determine whether the impairment(s) is severe. *Id.* "An impairment or combination of

impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The claimant bears the burden of proof at steps one through four of the sequential analysis. *Fetting*, 62 F.4th 332, 336 (7th Cir. 2023) (citing *Clifford*, 227 F.3d at 868). Therefore, it is plaintiff's burden to establish that an alleged impairment is medically determinable and that an impairment is severe.[3]

This case involves a very narrow relevant period of disability: November 29, 2016 (the alleged onset date) through December 31, 2016 (the date last insured). Plaintiff alleged disability due to rheumatoid arthritis and chronic pain.[4] [13-1] 228. At step two of the sequential analysis, the ALJ found that "[t]hrough the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment."[5] [13-1] 29. *See also* [*id.*] 31 ("Accordingly, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured."). The ALJ therefore ended the analysis there and concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 29, 2016, the alleged onset date, through December 31, 2016, the date last insured."[6] [*Id.*]

Before summarizing the record evidence, the ALJ stated that "[a]lthough there is evidence in the record that the claimant suffered from osteoarthritis, polyarthritis, rheumatoid arthritis, emphysema, hypertension, GERD, and hyperlipidemia, there is no evidence in the record to establish there [sic] conditions as *severe impairments* prior to his date last insured of December 31, 2016." [13-1] 29 (emphasis added). And later in the decision, in finding the opinions of the state agency medical consultants persuasive, the ALJ stated that their opinions were "consistent with and supported by the medical evidence of record that shows the claimant *did not any [sic] severe impairments* established prior to his date last insured." [*Id.*] 30 (emphasis added).

As previously explained, however, the regulations break step two into two distinct and sequential determinations: (1) whether the plaintiff has a medically determinable impairment and, only if the answer is yes, (2) whether the impairments

---

[3] *Charles M. v. O'Malley*, 23-cv-50068, 2024 WL 1363668, at *3 (N.D. Ill. Mar. 29, 2024); *Martinez v. Saul*, No. 19-CV-152, 2020 WL 6293215, at *3 (N.D. Ind. July 21, 2020).
[4] The ALJ's decision stated that "claimant alleges limitations resulting from rheumatoid arthritis and emphysema that he states restrict his ability to work." [13-1] 29. However, plaintiff's pre-hearing memorandum before the ALJ, [13-1] 228–29, the transcript of the hearing before the ALJ, [*id.*] 38–62, and the briefing on review before this Court focus on rheumatoid arthritis and do not mention emphysema. Review of the ALJ's consideration of plaintiff's emphysema is therefore not before the Court.
[5] Following this statement, the ALJ's decision cited 20 C.F.R. § 404.1520(c). This section of the regulations involves how ALJs consider and articulate medical opinions and prior administrative findings for claims filed on or after March 27, 2017. The Court is not sure how this particular section of the regulations is relevant to the ALJ's step two analysis and notes it is likely a typo.
[6] *See supra* n.5.

4

are severe. 20 C.F.R. § 404.1521 ("*After we establish that you have a medically determinable impairment(s)*, then we determine whether your impairment(s) is severe.") (emphasis added). The ALJ's decision, however, makes incompatible findings that plaintiff has no medically determinable impairments and that plaintiff has no severe impairments.[7] The ALJ therefore improperly combined these two separate findings in one conclusion that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured." [13-1] 31.

### B.     The ALJ's Error Was Harmless

"Normally a failure to apply the correct legal standard requires us to remand the case to the ALJ for further proceedings." *Karr*, 989 F.3d at 513 (citing *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016)). "But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required." *Id.* (citing *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018)). *See also Samson v. U.S. Dep't of Lab., Admin. Rev. Bd.*, 732 F. App'x 444, 446 (7th Cir. 2018) ("But the ALJ's error of law about the report does not require a remand if the error is harmless."). In other words, "[a]n error is harmless if, upon examination of the record, the court can 'predict with great confidence what the result of remand will be.'" *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)).

Upon reviewing the record and the ALJ's consideration of the evidence, the Court is convinced that on remand, the ALJ would conclude that plaintiff had no medically determinable impairments from November 29, 2016 through December 31, 2016, or find that he did but that these impairments were not severe, and the result on remand either way would still be a finding of "not disabled."

As the Commissioner points out, there is no record evidence from the relevant period, *i.e.*, November 29, 2016 through December 31, 2016. [19] 1, 3. Nor does plaintiff point to any record evidence from this window of time that the ALJ failed to consider. *See* [15]. But "the lack of a diagnosis or treatment for a medically determinable impairment prior to the date last insured does not absolve the ALJ of the responsibility to determine whether that impairment nonetheless arose at an earlier time." *Ibrahim I. v. Saul*, No. 17-cv-05983, 2020 WL 1820598, at *4 (Apr. 10,

---

[7] The Commissioner's brief also appears to blur the lines: "Plaintiff then argues that temporary resolution of pain was not enough to show that his impairments were not medically determinable (Brf. at 9). Not so. An impairment must last or be expected to last for a continuous period of twelve months to satisfy the duration requirement. 20 C.F.R. § 404.1509." [19] 5. The duration requirement is not taken into consideration until a medically determinable impairment is established. *See, e.g.*, *Aida U. v. Kijakazi*, No. 20-cv-5669, 2022 WL 4109717, at *1 (N.D. Ill. Sept. 8, 2022) ("If a claimant establishes that she has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month durational requirement[.]") (citing 20 C.F.R. § 404.1520(a)(4)(ii)).

2020). And although "an ALJ should consider the record as a whole, it is well-settled that evidence which pre-dates or post-dates a claimant's disability period is relevant to the disability determination only to the extent that such evidence is probative of the claimant's conditions and impairments during the disability period." *Edward G. v. Kijakazi*, No. 21-cv-1872, 2023 WL 4243213, at *6 (N.D. Ill. June 26, 2023) (collecting cases).

In summarizing the record evidence, the ALJ first noted that during a February 2016 visit to his primary care physician, plaintiff denied joint pain and examination of the musculoskeletal system was normal, showing that plaintiff had normal gait, reflexes, and sensation. [13-1] 29 (citing [*id.*] 353–54). During a June 2016 visit, plaintiff denied joint pain or swelling and examination of the right lower extremity was normal. [*Id.*] (citing [*id.*] 362–63). The ALJ then summarized the findings of an August 2, 2016 x-ray of plaintiff's right knee:

> An August 2016 X-ray of the right knee showed extensive bony reactive changes and degenerative cyst formation seen involving both the lateral and medial malleolar articulations to the talus, and anterior talotibial articulation. This may represent postuaumatic [sic] changes especially at the medial malleolar level. The remainder of the talar dome itself appears fairly well preserved. Subtalar joints appear to be intact. Mild soft tissue swelling is seen both lateral and medial malleolar. (Exhibit 4F/15). X-rays of the right knee had normal appearance to the lateral and medial joint compartment without evidence of narrowing or significant arthritic changes. Patella appears to be unremarkable. No significant intraosseous lesions are appreciated. There does appear to be a large suprapatellar pouch effusion, which may reflect significant synovial inflammatory changes. (*Id.*).

[*Id.*] 29–30 (quoting [*id.*] 364). The ALJ noted the results of an August 14, 2016 follow up visit, during which plaintiff was treated for exacerbation of knee pain and reported that a course of Diclofenac had helped but not completely. [*Id.*] 30 (citing [*id.*] 368). X-rays showed extensive osteoarthritis of the ankle, which was less symptomatic, and moderate knee bursitis, which was still somewhat painful. [*Id.*] (citing [*id.*] 368). A musculoskeletal examination of plaintiff's right lower extremity showed mild tenderness to palpation and mild crepitus to the right knee, and the ankle was normal on examination. [*Id.*] (citing [*id.*] 368).

Continuing on, the ALJ's decision noted that x-rays of plaintiff's left wrist in September 2016 showed findings consistent with significant osteoarthritis, greatest at the first metacarpal carpal joint. [13-1] 30 (citing [*id.*] 372). The ALJ quoted the impressions noted from these x-rays: "Bone densities seen along the proximal radial aspect of the first metacarpal and along the dorsal lateral aspect of the lunate. Technically, chip or avulsion type fractures cannot be excluded. Clinical correlation

with associated symptoms is recommended." [*Id.*] (quoting [*id.*] 372). And in summarizing notes from an October 2, 2016 follow up visit, the ALJ noted that plaintiff's wrist pain had responded to NSAIDs, the pain was better, and his functioning had recovered. [*Id.*] (citing [*id.*] 376). The ALJ noted that labs showed significant inflammatory process but x-rays showed only degenerative joint disease, and that plaintiff was referred to Rheumatology. [*Id.*] (citing [*id.*] 376).

At the hearing before the ALJ, plaintiff asserted that after the date last insured, he was diagnosed with rheumatoid arthritis in the summer of 2017, and plaintiff requested that the ALJ relate that diagnosis back to predate the date last insured. [13-1] 42 (citing [*id.*] 393). *See also* [*id.*] 229 (plaintiff's brief before the ALJ asserting he was diagnosed with rheumatoid arthritis in July 2017). Plaintiff argued that it was clear he was having issues with rheumatoid arthritis prior to his actual diagnosis and that those issues did preclude his ability to work full time. [*Id.*] at 42. In her decision, the ALJ did consider record evidence post-dating plaintiff's date last insured. The ALJ noted that plaintiff's diagnosis in May 2017 was polyarthralgia. [*Id.*] 30 (citing [*id.*] 386). The ALJ cited records noting that in July 2017, plaintiff's rheumatoid arthritis was under control with Diclofenac. [*Id.*] (citing [*id.*] 393). And the ALJ observed that plaintiff was not started on Methotrexate until November 2017. [*Id.*] (citing [*id.*] 403).

"Records from medical treatment that took place after [the] last date insured . . . are relevant only to the degree that they shed light on [claimant's] impairments and disabilities from the relevant insured period." *Million v. Astrue*, 260 F. App'x 918, 921–22 (7th Cir. 2008). *See also Stile v. Colvin*, No. 14 C 4379, 2017 WL 2908783, at *6 (N.D. Ill. July 7, 2017) (same). "A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period." *Liskowitz v. Astrue*, 559 F.3d 736, 742 (7th Cir. 2009) (quoting *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.1998)). And "the Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period." *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *7–8 (N.D. Ill. May 13, 2019) (quoting *Rubio v. Astrue*, No. 10 C 6529, 2011 WL 3796755, at *9 (N.D. Ill. Aug. 24, 2011)). *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021); *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011); *Thomas v. Astrue*, 352 F. App'x 115, 116 (7th Cir. 2009). *See also Elsen v. Saul*, 19-cv-259, 2019 WL 6799427, at *3 (W.D. Wis. Dec. 13, 2019) ("But evidence that a condition worsened after a claimant's date last insured is not itself a basis for granting benefits during the period of coverage.").

Plaintiff points to records that the ALJ *did* consider or that occurred much later after the December 31, 2016 date last insured. [15] 2–5, 7–8, 11–12. For example, plaintiff highlights his treatment with a rheumatologist starting in February 2018 and abnormal examinations from November 2017 through 2018 and into 2019. This evidence certainly relates to ailments that plaintiff complained of and

7

was seen for earlier in time, and it clearly demonstrates that plaintiff's conditions may have progressed and worsened. But such evidence does not show that during the relevant period, from November 29, 2016 through December 31, 2016, plaintiff was disabled or even that he had a severe impairment. Plaintiff has not met her burden to establish that there is evidence in the record from which the ALJ could infer that plaintiff's polyarthralgia and/or rheumatoid arthritis was disabling during that brief, critical window. "The law requires that a claimant demonstrate his disability within the prescribed period of eligibility, not prior to nor subsequent to the dates in question." *Jolene C. v. Saul*, No. 18 CV 50015, 2019 WL 3037070, at *5 (N.D. Ill. July 11, 2019) (quoting *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971)). *See also Franks v. Saul*, No. 19-CV-979, 2020 WL 6268807, at *3 (N.D. Ind. Oct. 23, 2020) (same).

After evaluating the record evidence, the ALJ turned to the opinion evidence. The state agency medical consultants opined that there was insufficient evidence to determine whether plaintiff was disabled prior to his date last insured. [13-1] 30 (citing [*id.*] 66, 73–76). The ALJ found that these opinions were persuasive because they were consistent with and supported by the medical evidence of record showing that plaintiff did not have any severe impairments established prior to the date last insured. [*Id.*] In evaluating the treating source statements completed by plaintiff's physician, Dr. Duong, the ALJ found the June 10, 2019 opinion not persuasive because it was completed several years after the date last insured and did "not reflect the limitations or abilities that might have been present for the claimant during the time period considered in this decision." [*Id.*] (citing [13-1] 342–44; [13-2] 47–50). Dr. Duong also completed a treating source statement on December 9, 2019, which stated that plaintiff was limited as of August 14, 2016. [*Id.*] (citing [*id.*] 435–37). The ALJ summarized Dr. Duong's opinion but found that the limitations suggested by Dr. Duong were not persuasive because they were not consistent with or supported by the medical evidence of record. [*Id.*] 30–31.

Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Duong, who was plaintiff's treating provider during the time period at issue. [15] 12. The Seventh Circuit has stated that it "typically expect[s] an ALJ to consider an opinion by a doctor who treated the claimant after the relevant period if it offers a retrospective diagnosis that is corroborated by evidence produced during the relevant period." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (citing *Liskowitz*, 559 F.3d at 742). *See also McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018) (noting that it has "previously held that a medical advisor's retrospective diagnosis may be considered only if corroborated by evidence contemporaneous with the period of eligibility") (citing *Liskowitz*, 559 F.3d at 742; *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008)).

First, there is no indication that Dr. Duong's June 10, 2019 treating source statement referred to plaintiff's abilities and limitations during the relevant period

8

of disability, *i.e.*, November 29, 2016 through December 31, 2016. [13-1] 342–44. The ALJ did not err in finding this opinion not persuasive or relevant. Again, "evidence which pre-dates or post-dates a claimant's disability period is relevant to the disability determination only to the extent that such evidence is probative of the claimant's conditions and impairments during the disability period." *Edward G.*, 2023 WL 4243213, at *6 (collecting cases). Therefore, these treating source statements are "relevant only to the degree that they shed light on [claimant's] impairments and disabilities from the relevant insured period." *Million*, 260 F. App'x at 921–22. There is nothing in Dr. Duong's June 10, 2019 treating source statement to suggest that he was referring to plaintiff's abilities during the relevant period rather than at the time he completed the form.

Second, the ALJ found Dr. Duong's December 19, 2019 treating source statement not persuasive because there was no evidence that a cane had been prescribed prior to the date last insured, plaintiff reported improvement in pain with Diclofenac and functioning returned, and although scans showed inflammation, examinations were not consistent with that finding. [13-1] 30–31 (citing [*id.*] 435–37). Although plaintiff takes issue with each of these findings, [15] 13–14, plaintiff has not raised any error warranting remand or demonstrated that the ALJ's findings were not supported by substantial evidence. Plaintiff's concerns amount to a disagreement over how the ALJ weighed and considered the evidence, but this reviewing Court cannot substitute its own judgment for that of the ALJ by reevaluating the facts, reweighing the evidence, or resolving debatable evidentiary conflicts as long as substantial evidence supports the ALJ's decision. *Chavez*, 96 F.4th at 1021; *Gedatus*, 994 F.3d at 900; *Stephens*, 888 F.3d at 327.

Despite the ALJ's error of law in combining the two separate and distinct evaluations that make up step two of the sequential analysis, the Court finds that the ALJ's decision would not change on remand. Although the ALJ's articulation might leave something to be desired, [15] 9 ("Plaintiff may only guess at her reasoning based on things implied but left unstated in her decision."), the Court finds that the ALJ's discussion of the record evidence and consideration of the opinion evidence adequately provided a "logical bridge" between the evidence and her conclusions. *Bakke*, 62 F.4th at 1066. Again, substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr*, 989 F.3d at 511. On the very specific question of whether plaintiff had a medically determinable impairment, and, if so, whether that impairment was severe, during the relevant period of November 29, 2016 through December 31, 2016, the Court is satisfied that the ALJ's conclusion was supported by substantial evidence. On remand, although the ALJ may correct her error of law and change her articulation of her findings, the Court is confident that the ALJ's conclusions at step two of the sequential analysis would remain the same and result in the same finding of not disabled.

9

## Conclusion

For the foregoing reasons, plaintiff's motion to reverse and remand [14] is denied, defendant's motion for summary judgment [18] is granted, and the decision denying the application for benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 24, 2024**